## HARDWICK v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   May 5, 1919.)

No. 3240.

1. PERJURY ⬤—9(2)—SELECTIVE SERVICE REGULATIONS—AUTHORITY TO ADMINISTER OATH.

Under the Selective Service Regulations, published November 8, 1917, pages 7 to 14, associate member of the legal advisory draft board of a county in California *held* to have had authority to administer to a registrant an oath on the occasion of such registrant's verifying his questionnaire as to the details of persons dependent upon him, as a wife.

2. PERJURY ⬤—19(2)—INDICTMENT—FRAUD IN OBTAINING EXEMPTION FROM SELECTIVE DRAFT.

Where the indictment, charging defendant with having unlawfully, improperly, and fraudulently endeavored to obtain the allowance of his application for exemption and discharge from the selective service draft on the ground that he had a dependent wife, charged that he willfully and falsely stated in the affidavit to his questionnaire that he had a wife dependent on his labor for support, etc., such indictment was not defective because failing to aver that the wife was mainly dependent for support on defendant's labor.

3. CRIMINAL LAW ⬤—97(1)—JURISDICTION OF COURT—PERJURY IN OBTAINING EXEMPTION UNDER SELECTIVE SERVICE ACT.

The United States District Court in California had jurisdiction to try a prosecution for having unlawfully, improperly, and fraudulently endeavored to obtain allowance of an application for exemption and discharge from the selective service draft on the ground defendant had a wife dependent on his labor for support, where the indictment alleged that the affidavit involved was prepared and sworn to in California, though it charged that defendant registered in the state of Washington.

In Error to the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Noah F. Hardwick was convicted of perjury by having unlawfully, improperly, and fraudulently endeavored to obtain allowance of his application for exemption and· discharge from the selective service draft, and brings error.   Affirmed.

George D. Collins, Jr., of San Francisco, Cal., for plaintiff in error.
Annette Abbott Adams, U. S. Atty., and Chauncey F. Tramutolo, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge.   The defendant, who was represented by counsel, pleaded guilty and was sentenced to imprisonment under an indictment which, after certain preliminaries not now material, charged that on June 5, 1917, at Walla Walla, Wash., he registered under the act to authorize the President to increase temporarily the military establishment of the United States (Act May 18, 1917, c. 15, 40 Stat. 76 [Comp. St. 1918, § 2044a et seq.]); that he was called for military service in the Northern district of California, and on the 15th of January, 1918, he prepared and filed with the local board for the county

⬤—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of Walla Walla, Wash., in support of a claim made by him for exemption and discharge from selective service draft, with the intent of deceiving the officers of the local board for said county in Washington, and "of unlawfully, improperly, and fraudulently endeavoring to obtain the allowance of his application for exemption and discharge" from the selective service draft on the ground that he had a wife dependent upon his labor for support, a certain affidavit, subscribed and sworn to before George M. Hench, associate member of the legal advisory board of San Joaquin county, Cal., "an officer competent and authorized by the laws of the United States of America to administer oaths, and to administer the oath to defendant to testify and tell the truth"; that in the affidavit mentioned "it was material and necessary to set forth whether or not the said defendant had any person or persons dependent upon his labor for support," and the defendant, so having taken the oath as aforesaid, "* * * did then and there willfully, unlawfully, feloniously, and falsely, intentionally and contrary to such oath," state that he, the said defendant, did have a wife named Gynetha G. Hardwick, dependent upon his labor for support, "whereas, the defendant then and there well knew that said Gynetha G. Hardwick was not at that time, nor at all, his wife, and dependent upon his labor for support, and that said false statement was and is a material matter and a material part of said affidavit."

In the lower court there was no challenge as to the sufficiency of the indictment. By writ of error defendant here presents the question whether the indictment states an offense.

Perjury is defined by section 125 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1111 [Comp. St. § 10295]) as follows:

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, shall willfully and contrary to such oath state or subscribe any material matter which he does not believe to be true, is guilty of perjury, and shall be fined not more than two thousand dollars and imprisoned not more than five years."

[1] It is said that under the Selective Service Regulations, published November 8, 1917, pages 7 to 14, the associate member of the legal advisory board of San Joaquin county, Cal., had no authority to administer the oath on January 15, 1918. But the regulations prescribed that the oath required could be administered (section 10, paragraph 4) "by any person designated to act in the capacity of legal aid or adviser to registrants." Under section 30, page 14, of the Regulations:

"The Governor shall constitute legal advisory boards in such numbers and within such districts that there shall be convenient to every registrant who is to appear before a local or district board within the state, a legal advisory board. * * * The Governor shall call upon all members of the bar within the state, and if necessary, upon competent laymen, to offer their services to such legal advisory boards for the purpose of being present at the headquarters of the local boards and rendering aid and advice to registrants. Such persons

shall be known as associate members and no formal appointment by the President shall be necessary."

The President was authorized to utilize the services of any or all officers or agents of the several states and subdivisions thereof in the execution of the act, and all persons designated or appointed under the regulations prescribed by the President, whether such appointments were made by the President himself, or by the Governor or other officer of any state, to perform any duty in the execution of the act, were required to perform such duty as the President should order or direct, and all persons so designated or appointed were given full authority for all acts done by them in the execution of the act by the direction of the President. Section 6 of the act (Comp. St. 1918, § 2044f). By rule (section 27) the Governors were charged with general supervision over all matters arising in the execution of the selective draft within their states, and it was also provided:

"The determination of exemptions and deferred classifications is within the exclusive jurisdiction of local and district boards, subject only to review by the President, but all other functions and duties of boards, departments, officers, agents and persons within the state, * * * designated or detailed under authority of the selective service law, shall be under the direction and supervision of the Governor."

By section 28, the Governors were charged with the organization of the legal advisory boards throughout their states. By section 30, the Governor—

"shall constitute legal advisory boards in such numbers and within such districts that there shall be convenient to every registrant who is to appear before a local or district board within the state, a legal advisory board to which such registrant may apply for all necessary advice and assistance in preparing claims, questionnaires or any other papers required by these regulations to be submitted by a registrant."

The Governor was authorized to nominate for appointment by the President lawyers to be permanent members of such boards "to take charge of this work within each such district and to be held responsible that there shall always be a competent force of lawyers or laymen available to such registrants at any time during which the local or district boards within such district are open for business"; also to call upon the members of the bar to offer their services to such legal advisory boards for the purpose of being present at the headquarters of the local board and of rendering aid and advice to registrants. "Such persons shall be known as associate members and no formal appointment by the President shall be necessary." Section 45 declares that legal advisory boards have been provided for; that they are composed of disinterested lawyers, with associate members to be present at all times during which local boards are open for the transaction of business, with a view to advising and assisting registrants to make full and truthful answers to the questionnaire and to aid generally in the just administration of the law and regulations. By section 2 it was provided that certain sections and parts of the rules and regulations should become effective at noon on November 20, 1917, and thereupon supersede all pre-existing rules and regulations relating to the same subject-

matter, namely, sections 9 to 13, inclusive. Enough has been stated to make it clear that section 10, hereinbefore quoted, was in effect on November 20, 1917, and therefore obtained at the time that the oath described in the indictment herein was administered to the defendant.

By section 91, which pertains to the questionnaire, grounds for exemption are dealt with; the rule directing that the questionnaire shall contain, "as an integral part thereof, affidavits in support of claims for exemption or deferred classification in certain cases hereinafter specified." Among the definitions we find this provision:

(k) "The term 'deferred classification' is equivalent to discharge or exemption from draft, whether permanent, temporary, conditional or unconditional."

Our attention is not called to any section of the Selective Draft Law which forbids one from registering in one locality and then making affidavit in support of a claim for exemption in another place. The whole scheme of the law appears to have been to facilitate registration, and in doing so to allow one whose duty it was to register to fulfill his obligation at the place he happened to be when the law required the duty to be performed.

Inasmuch as the regulations prescribed by the President for the determination of the status of a registrant require a showing for exemption to be made by affidavit, and inasmuch as the regulations have the force and effect of law, we think it appears that the person who took the oath was authorized by law to administer it.

[2, 3] Defendant urges that the averment that the defendant well knew that the woman named in the indictment "was not at that time, nor at all, his wife, nor dependent upon his labor for her support," was fatally defective, because of the omission of an averment that the wife was *mainly* dependent for support upon the labor of the accused. But, as the charge is that defendant willfully falsely stated in the affidavit that he had a wife dependent upon his labor for support, whereas he well knew that the woman named was not then, or at all, his wife, and dependent upon his labor for her support, defendant was sufficiently informed and could not possibly have been misled or prejudiced. The materiality of the false statement and affidavit is too apparent to require comment.

It is said that the United States District Court in California was without jurisdiction, because the indictment shows that the offense, if any, was committed in the state of Washington, and not of California. The fact being alleged that the affidavit involved was prepared and sworn to in San Joaquin county, Cal., plainly there was jurisdiction in the lower court.

This disposes of the principal points urged. We have considered the others argued in the brief, and find none well founded.

The judgment is affirmed.